UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| EMBASSA HAGUAS, <br> a/k/a Ambessa B. Hagos, <br><br> Petitioner, <br><br> v. <br><br> STATE OF MAINE, <br><br> Respondent | ) <br> ) <br> ) <br> ) <br> ) <br> ) 2:12-cv-00042-DBH <br> ) <br> ) <br> ) <br> ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Embassa Haguas was convicted of elevated aggravated assault on March 17, 2010, following a three-day jury trial. He is currently serving four years imprisonment on a ten-year sentence which includes a four-year probationary term. His court appointed counsel took a direct appeal to the Law Court on July 9, 2010. The Law Court affirmed the conviction on April 28, 2011, in a brief memorandum of decision. State v. Haguas, Mem-11-59, Docket No. Cum-10-384. The Law Court addressed three issues on his direct appeal. On February 1, 2012, Haguas filed this timely petition pursuant to 28 U.S.C. § 2254 (ECF No. 1), seeking a reprise of those same three issues. I cautioned Haguas about the fact that he still had sufficient time to file a state post-conviction proceeding if he wanted to raise additional claims, such as ineffective assistance of counsel, which could not have been raised under Maine law in his direct appeal. (ECF No. 4.) Haguas elected not to proceed further in state court and therefore the only issues before this Court are the three issues he raised in the direct appeal and again in the existing 28 U.S.C. § 2254 petition. For the reasons that follow, I recommend that the Court deny the petition.

**The Factual Background**

The defendant and his girlfriend and her two children had a friend, Will, who resided in a neighboring apartment with his girlfriend. Haguas and the neighbor had a falling out over some miscommunication about Haguas's girlfriend. The neighbor, in turn, had a friend, John, who would spend time at the apartment with his own girlfriend. One afternoon the neighbor returned home with his friend and John's girlfriend. Haguas was inside his own apartment but he was somehow engaged by the neighbor and came downstairs to resolve a disagreement. A fight ensued between the neighbor and Haguas, while John sat on the porch eating his lunch. Following round one of the fight, Haguas headed toward the porch, presumably to retreat into the residence. John's girlfriend and Haguas exchanged words and John told Haguas "not to disrespect his girlfriend." Haguas then returned to the front lawn area where he had been fighting with the neighbor, Will. It appeared that Will and Haguas were going to resume fighting, but the extent of any further fight is not clear on the record. Haguas says that he punched Will over by the car and then got hit in the back of the head by something, but he does not know what or by whom. He does not remember too much after that. The girlfriend, Will, and John tell different versions of those events, but everyone agrees that a fracas between Haguas and John occurred next in time.

Will, the girlfriend, and John generally agree that Haguas turned away from Will and ran at John who dropped his sandwich and put his key ring over his hand, presumably to use as a weapon. Haguas put John in a chokehold and started to punch him. John's girlfriend attacked Haguas and John got away from him, at which point he realized he had been stabbed and was

bleeding.  John was the named victim on the indictment.  Police arrested Haguas when they arrived at the scene.   Haguas complained about and was treated for a head injury approximately six days later at the Cumberland County Jail when he met with a physician's assistant during an initial intake physical.

### *The Issues Raised in the Federal Habeas Petition*

Haguas raises as his first ground in this Court the issue of whether the jury instructions were insufficient as a matter of law.  Haguas sought, but did not obtain, an instruction on mistake of fact.  He claims that by failing to give the requested instruction and by instructing the jury regarding reasonable belief and use of deadly force when discussing self-defense, the state trial court lowered the mens rea required in connection with the self-defense instruction.  (ECF No. 5.)  Haguas's second claim is that the state court erred when it failed to dismiss the case for multiple egregious discovery violations by the prosecution.  Haguas's third claim is that no rational fact finder could find the state proved every element of the offense beyond a reasonable doubt.

### *The Issues Raised in the State Court*

There is no question but that Haguas raised these same three claims in state court. However, the state maintains as to grounds one and two that Haguas did not posit the issues as issues of constitutional dimension when framing his challenge in the state courts.  The state does concede that as to ground three in the petition, Haguas's challenge in state court sufficiently alerted the Law Court to the fact that claim was being made pursuant to a direct line of state court decisions that could ultimately be traced back to the federal constitutional standard announced in Jackson v. Virginia, 443 U.S. 307 (1979), and In re Winship, 397 U.S. 358 (1970). I will discuss each of the three issues Haguas  raised in the state court, bearing in mind that the

state has not waived the exhaustion requirement set forth in 28 U.S.C. § 2254 (b). Baldwin v. Reese, 541 U.S. 27, 29 (2004), requires that Haguas had to "fairly present" his claims in the state's highest court in order to alert that court to the federal nature of the claim. Haguas apparently thinks that his case is distinguishable because review by the Maine Law Court, this state's highest court, is available as a matter of right rather than as discretionary review. (Reply at 7, ECF No. 8.) However, the rule of Baldwin v. Reese does not depend upon whether the petitioner was before the state's highest court as a matter of right or seeking discretionary review, the issue is whether the claim's federal nature was fairly presented to the highest court.

If the petitioner has fairly presented a claim of federal constitutional magnitude to the state's highest court, then this Court considers whether the decision of the state court was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-406 (2000). By comparison, the "unreasonable application" clause of section 2254(d) applies when "the state court identifies the correct governing legal principle from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. It also applies when the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.  The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  See also Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (emphasizing that the state court decision "must be 'objectively unreasonable'") (quoting Williams, 529 U.S. at 409).

*Sufficiency of the Jury Instructions*

The primary concern with respect to this ground and 28 U.S.C. § 2254 review is whether or not Haguas adequately apprised the Maine Law Court that there was a federal constitutional dimension to this challenge.  This is a "fairly presented" inquiry under the standard set forth in Baldwin v. Reese, where the Court observed:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

541 U.S. at 32.

Haguas attacks the sufficiency of the jury instructions on two flanks.  First, he claims that the trial court should have instructed the jury on the statutory defense, mistake of fact, found at 17-A M.R.S. § 36.  Second, he claims that the self-defense instruction given by the trial court lowered the mens rea for self-defense in the context of the specific intent crime of elevated aggravated assault with which the defendant was charged.

As to the second part of his claim, regarding the mens rea for self-defense, the Law Court has recognized the inherent constitutional issues associated with questions of mens rea in

5

criminal proceedings following the Supreme Court's decision in Mullaney v. Wilbur. 421 U.S. 684 (1975). See e.g. State v. Inman, 350 A.2d 716 (Me. 1976) (applying Mullaney v. Wilbur in the context of an omitted jury instruction). Mullaney v. Wilbur invalidated a Maine law requiring a defendant to establish an adequate provocation defense by a preponderance of the evidence in a murder prosecution. I am thus fairly confident that the Law Court was well aware of the federal due process nature of a claim that the state was required to disprove self-defense beyond a reasonable doubt in the context of this specific intent crime, even though the issue was not presented as a federal constitutional question. I am also convinced that the Maine Law Court, when it endorsed the instructions given in this case which in turn were taken almost verbatim from Alexander, Maine Jury Instruction Manual § 6-61 (4th ed. 2008), did not render a decision which was contrary to or an unreasonable application of, clearly established Supreme Court precedent. As part of the instructions given to the jury they were told that the State had to prove, beyond a reasonable doubt, either that the defendant provoked the encounter with the purpose to cause physical harm, or that the defendant knew he could retreat in complete safety, or that the defendant knew the victim was not about to use deadly force against him, or knew that his use of deadly force was not necessary to defend himself. (Trial Tr. at 359:23-360:20.) There was no constitutional violation in these instructions.

      As to Haguas's claim that the mistake of fact instruction should have been given, his argument to the Law Court relied entirely upon state law and the availability of the statutory defense in a situation such as his. However, the state's own brief cited to Neder v. United States, 527 U.S. 1 (1999), in support of the argument that the standard to be applied is that the claimed error in omitting the particular instruction requires vacating a judgment of conviction only where the record contains evidence that could rationally lead to a contrary finding with respect to the

omitted element.  The Law Court recognizes that "[f]ailure to give a requested instruction on a statutory defense generated by the evidence is error" and that "the State's burden to disprove a statutory defense generated by the evidence is 'the functional equivalent of the State's burden to prove all the elements of the offense.'"  State v. Hernandez, 1998 ME 73, ¶ 7, 708 A.2d 1022, 1025 (quoting State v. Begin, 652 A.2d 102, 106 (Me. 1995)).  The Law Court's conclusion that the omission of a mistake of fact instruction was not error because the facts did not generate that defense was neither an unreasonable application of, nor clearly contrary to, governing Supreme Court precedent, even if Haguas had not himself procedurally defaulted the federal nature of the claim regarding the omitted instruction.

*Sanctions for Multiple Discovery Violations*

The trial court found, and the State does not dispute, that there were multiple discovery violations under the Maine Rules of Criminal Procedure.  Under Maine precedent the trial court has discretion regarding the appropriate sanctions to impose in this situation.  In this case the trial judge carefully reviewed the newly disclosed materials and met with Haguas's counsel ex parte in order to assess the damage.  Ultimately the trial court postponed the trial for a month and prohibited the State from utilizing newly discovered reports or the writers of those reports as witnesses, finding no additional sanctions were warranted.  The Law Court reviewed the discovery sanction for an abuse of discretion under the standard set forth in Rule 37 (b)(2)(C) of the Maine Rules of Civil Procedure.  The Law Court has applied the same abuse of discretion standard in the context of criminal convictions.  The ultimate sanction of dismissal of a criminal charge with prejudice should be rarely invoked and then only in extreme cases.  In order to invoke that sanction the Law Court has suggested that the trial court should find the presence of prosecutorial bad faith and prejudice to the defendant resulting in the denial of a fair trial.  State

v. Graham, 2010 ME 60, ¶ 10, 998 A.2d 339, 341 (discussing imposition of sanctions in the context of a motion for mistrial).  Neither of those elements was present in this case.

Haguas argued this issue entirely in the context of state case law and rules of procedure. If he thinks there was some constitutional dimension to the trial court's refusal to dismiss the charges against him, he certainly did not "fairly present" that argument to the Law Court.  Under Baldwin v. Reese this Court should decline to address this issue that has not been considered as a federal constitutional challenge by the state's highest court.

*Sufficiency of the Evidence Challenge*

The United States Supreme Court has very recently considered a sufficiency of the evidence challenge in the context of a 28 U.S.C. § 2254 petition by a state court prisoner such as Haguas.  Claims brought under Jackson v. Virginia, 443 U.S. 307 (1979), challenging the sufficiency of the evidence face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  As the Supreme Court explained:

> First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'

Coleman v. Johnson, 132 S. Ct. 2060, 2062 (May 29, 2012) (per curiam) (citations omitted) (quoting Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (per curiam)).  Thus the State's concession that this claim was fairly presented to the Maine Law Court as a federal constitutional challenge gains Haguas little traction in terms of his likelihood of successfully pursuing the claim in a federal forum.

8

The evidence that Haguas stabbed the victim with a knife and caused him serious bodily injury appears to be largely undisputed.  Haguas's challenge to the evidence centers upon his claim that there was insufficient evidence to disprove the self-defense claim.  However, multiple witnesses testified that prior to assaulting John, Haguas had told him to "check your girl" referring to a disparaging remark made to him by John's girlfriend.  Additionally, although Haguas claimed to have been hit from behind and did not remember the events, witnesses were able to describe the encounter between Haguas and John.  According to those witnesses, Haguas disengaged from his fight with the neighbor, Will, and charged at John who had been eating his lunch on the porch. Even Haguas agreed that John was eating his lunch at the time of the initial encounter.  The entire fight took place on a residential street with multiple means of egress.  On two occasions Haguas had been able to disengage and walk away from the fight with Will which was taking place across the yard by a car.  The fact that the various versions contained inconsistencies, and that Haguas had an entirely different version of the events, offer insufficient reason to grant a writ of habeas corpus from a federal district court.

Haguas's claim regarding sufficiency of the evidence, although "fairly presented" as a federal claim in the state's highest court, fares no better in this Court than his other claims.  The Law Court's brevis disposition of Haguas's direct appeal does not, in and of itself, make his case one where federal habeas relief should be granted.  Haguas apparently believes that the Law Court should have discussed the legal issues "in more depth."  (Reply at 7.)  This Court has no role in policing the length of state court opinions.  The state court's reasoning is fully set forth in its Memorandum of Decision.

## CONCLUSION

For the reasons stated above, I recommend that the Court deny relief under 28 U.S.C. § 2254, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Haguas files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 28, 2012                               /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge